Good morning. Throughout the day, if you're arguing, and I happen to stand up, it's only because I'm still recovering from my back surgery. So don't feel intimidated or the need to stop. It's just I'm doing it for my own reasons, not because of something I'm Troske v. Karen Troske. And the appellant is Ms. Shearer. Would you proceed, please? Good morning. May it please the Court. I'm here today representing the appellant Robert Bob Troske. First, I would like to address a satellite issue, the motion to dismiss and show cause order filed by attorney for Karen Troske, Kirk Blood, in I believe it was late March of 2013, and addressing the issue of jurisdiction. This Court has jurisdiction to address this appeal. On September 10, 2012, a judgment, a supplemental judgment as it was called, was entered by the trial court approximately 455 days after the judgment should have been entered and for final ruling on all issues should have been entered. This case was tried in the early winter of 2010, essentially January and March. I believe there may have been a trial date in February. The Court issued its ruling 18 months later. There was a 90-day rule in Madison County for issuing ruling. I filed a notice of appeal from the September 10, 2012 judgment, September 10, September 11, excuse me, on October 9th. On October 5th of 2012, the companion attorney for Mr. Troske filed in the trial court a post-judgment motion to modify child support and maintenance. When the Court issued its ruling, I should say the trial court, all substantive issues. The only thing the Court did not address was the following. Child support had been established. The amount of child support order was $2,000 a month. I believe it was retroactive to August of 2009. Maintenance was ordered at $500 a month. I believe that was also retroactive. There was some question as to whether or not my client, Bob Troske, had fallen behind on his child support and maintenance during the time that all of the proceedings were pending. What the Court left open was for the parties and their counsel to do mathematical calculations as to whether or not there was any arrearage, and there presumably wasn't arrearage, and to what that amount was, and presumably to set up a payment plan. That is something that parties usually work out. Ms. Sherrod, did they then agree at any given time on the arrearage amount? The trial counsel? Yes. Yes, they did. They did. They agreed on the arrearage amount and an order was entered. I don't know the exact date in January, but I'm feeling it was January 25th or January 28th of 2013. Leaving mathematical calculations when you set up the numbers is not leaving a substantive issue. To hold off on the appeal would have been ridiculous at that point, frankly, especially considering these parties had waited 18, almost 19 months for a ruling from a judge who started out the trial proceedings in January of 2010, was saying to the people, you know what? Because this case had gone on for quite a long time. I mean, this has been proceedings that are just item to item. I mean, there's another companion case here today. It's the case that's going on. I'm wondering why it took so long. What was going on in the court? I mean, were there problems with discovery abuse or was it the court that was taking so long? What happened? You mean between the time of the close of testimony and the ruling? No. First of all, with all the different trial dates. Like in her order, she gives the trial dates. She does. She does them out in there and I could pretty much recite them to you. I mean, I was not shocked. January through March and our Supreme Court says you should try to have hearings as close as possible. Well, that would make sense, especially since it's not your life and it would be easier to understand. I can't speak to that. First of all, I was not trial counsel until the Farringham was. I could conjecture about what goes on in Madison County, but I don't think it's part of the record. That's okay if you don't know. I don't know. And it's not part of the record. On this whole issue of jurisdiction, though, doesn't Rule 303A allow for the appeal to be passed? It absolutely does. I mean, I'm just going to get to that. I mean, I'm clearly appearing before you right now. Okay, there are other issues in my mind that I think you could address. That's fine. If the Court wouldn't mind skipping over the jurisdiction right now. I'm happy to do that, but if I may quickly say that the 2008 amendments to Rule 303A2 are to address exactly this situation and not to allow somebody to prevail on a technicality. If you would like, I would be happy to move on to the next issue I addressed in my brief, which was the violation of the local court rule, which I think I touched on briefly. Those rules for issuing an opinion in 90 days, they're not suggestions. This is not like a cocktail party invitation where you drop in any time. This is like an invitation to a White House dinner. How are you prejudiced by that? Do we have to be prejudiced to have a court and have the trial court perform at the level they're supposed to be? I don't know. How does that relate to any abuse of discretion in the order? That's what I'm trying to figure out. I don't know that it relates. Well, here's how it relates to it. I'm presuming that that local court rule is so judges can issue opinions and people can get a result in their lives and move forward. And also, from the perspective of what I would imagine it would be like if I was just hearing this information, not being familiar with the case, I would think it would be easier and there would be a more reliable written decision for myself if I were writing it if I got it out within 90 days or three months as opposed to 18 months. And we may all agree with you on that. I'm just wondering how that relates to maintenance issues and all the other things that are raised. Well, first of all, I think the opinion is inherently unreliable because of this passage of time. Also, the passage of time along with this stipulations that they were all agreeing to use income figures, which everybody could agree were at least 14 months out of date at the time of the first hearing in January of 2010. I mean, you're issuing an opinion three years after those figures were out and saying, here, this is what your maintenance obligation should be, but I'm basing your ability to pay on information that we can all agree is three years out of date. And that, to me, seems to be an abuse of discretion. The judge knew these figures were out of date. She shouldn't have accepted them in the first place. I mean, 14 months out of date is craziness to accept in the first place. It is the judge's job to control what goes on in the court and to have some order to go on in the court and to make sure that a decision is based on reality and that it's a just decision. But at the hearing, no one objected to the use of the stipulated numbers. Okay. Well, Mr. Ferenkamp, who represented Bob Crosby, attempted. It was clear within about half an hour of agreeing to the stipulation that there was no meaning in the minds as to what the intent of those stipulations would be. Mr. Ferenkamp, Mr. Crosby's attorney, did not object because he was the one trying to get them in. Mr. Velloff, who represented Karen Crosby, the appellee, objected. Mr. Ferenkamp tried several times to get those, to get other information in. It was necessary at that point as far as maintenance and child support, not to mention attorney fees. He tried also to use them for impeachment of Ms. Crosby, something that the parties had agreed would be okay, and the judge did not allow it. He also tried to have Mr. Crosby introduce evidence about how the insurance agency, which is my client's line of business, was changing. I mean, it was clear at that point that the insurance agency, my client is an insurance broker, he's kind of a middleman, that the climate was changing. I mean, you saw a decrease in his income from, I believe it was 07, 08 to 09, and here we are in 11. I believe he had just gotten his 2010 figures. He tried to testify about how the insurance agency was changing. None of that testimony was allowed, so then when you issue an opinion three years later and are saying your child support should be this, but I'm basing it on income you earned three years ago and I'm not allowing, I didn't allow you to present evidence of what your income was at the time of trial, not to mention the fact that the climate for your type of business is changing, I would say that that is an abuse of discretion. Additionally, it is clear that the property award, coupled with the maintenance, is indicative of the trial court's total dislike of Bob Trosky. He was criticized in the judgment for things, his feet were held to the fire at a standard that was not there for Karen Trosky. For instance, both of these parties took regular vacations during this litigation, and both of these parties indicated that their vacations were paid for other people. Karen's were supposedly paid for by girlfriends. Bob also was paid for by a girlfriend. And in the order, the court, you know, talks about how Mr. Trosky had these unexplained vacations. There was an implication almost that he had dissipated assets, yet there was no finding of dissipation. Well, if there's not a finding of dissipation, you have such an inequitable property award, clearly there is some bias on the part of the judge. I mean, it was punitive to Bob. Some of the comments also made about him in the order, for instance, the judge starts out her order by talking about how Bob's first wife died in August of 92, and then gratuitously puts in there that he started dating Karen Trosky in 1992. Well, it doesn't make him look very good that within four months of his young wife dying, suddenly he's dating somebody else. Later on in the order, I believe it's probably in the second or third page, the judge says something about how Karen, Bob and Karen began dating in the summer of 92. Well, I mean, there's a running theme of I don't like Bob Trosky. Well, I did pick up some credibility issues that perhaps he had with some of your client's testimony regarding some assets and the mine subsidence check. I'm trying to think what else, but there was a list. The check from the Ridgeview property? Yes. I'm assuming that's what you're referring to. And maybe so, however, there were similar issues with Karen Trosky. I mean, reading through just the transcript, you're going to see that both of these parties at times had explanations for where money was spent or why they couldn't account for money or how much money their business earned that might cause one to question possibly. I'm going to concede that I understand where you're coming from on that. But Bob's feet were held to the fire at a higher standard than Karen's. And we'll be able to discern that, you think, from the record? I don't. I mean, that's where we have to go on this, Karen. I understand that. I mean, this record has had its own set of problems, as you know. It was sent back twice to the clerk. That's unfortunate. I do not want to presume what anybody would understand from that record, Your Honor. But the standards for both of these people were vastly different. When you award one party and these parties, the income that each – okay, Karen does not stay at home mom by any means. She worked throughout the entire marriage. If you look at that record, it's going to look like Karen gave up a job where she was earning $95,000 a year with full benefits to work at her own business earning sometimes $750 a year. That doesn't make sense that anybody would do that. Why would somebody do that? But then the judge awards her maintenance and 104.1% of the assets. There's no way that you can come away from that and not think that this was punitive or an abuse of discretion. Karen was set up to go on with her life. Bob is left, you know, burning and bloody on the battlefield with nothing but paying all of – paying all the bills. Additionally, the order in some portions doesn't even make sense. It's almost like he's supposed to – she gets the house. He's supposed to pay the mortgage, but then he's supposed to use – I believe there were some CDs or IRAs or something to pay off the house. It's just – it was so inequitable that there just doesn't seem to be any justification for that. Additionally, some of the funds that the court may have had an issue with as far as where they were spent, these were at a time that was well before the breakdown of the marriage. This court issued an order – the trial court, excuse me – that was not based on reality by any stretch of the imagination. There is no way you can issue an order in late 2012 basing it on figures from 2009. The attorney fee award alone doesn't make sense. Attorney fees are based on ability to pay. How can this court – how can the trial court in September of 2012 say Bob Trotsky has the ability to pay $30,000 in attorney fees when they don't know what his income is? How can the court in the fall of 2012 say Bob Trotsky should be paying $2,000 a month in child support when they have no idea what he's earning at that point in time? It seems to me that if you wait that long, you could have a substantial change in circumstances in the time of the trial. A ridiculous change. A ridiculous change in circumstances. I mean, and in his business in particular. And the court knew – I mean, they at least knew what he did. They knew what his profession was. You would have to have your head in the sand to not realize that between the winter, the late 2009 when the income figures were derived from, and the fall of 2012, that there had not been a change in the health insurance agency. I mean, you'd have to be blind to not realize that. And I think the fact that there had been such a significant change is the reason that there was a petition for modification of child support and maintenance that was filed, you know, within 30 days after the court entered its order. It's just not an opinion that's based on reality. It's like a fantasy. You can't issue an opinion like this based on old figures. Maybe a division of the – I'm sorry? Go ahead. No, I was going to say maybe a division of the assets. The assets to some degree were stationary, but to have that division of the assets and then have a maintenance and child support award that were so one-sided based on old figures, it just doesn't make sense. Okay, thank you. You'll have an opportunity to speak again. Thank you, Your Honor. Mr. Blood. Thank you, Your Honor. May it please the Court. Counsel. For the audio record, my name is Curtis Blood. I represent Karen Trotsky. I wrote down some of the questions from the court, and I wanted to get to those right away. First, Justice Chapman, you asked if the ultimate arrearage order was agreed, and it was. An agreed order in January of 2013. So how is it – if it was agreed, how is it not then something that would be capable of execution of judgment, if that's one of the criteria we look at? No, I agree. It was. It was. Definitely was. So you're saying it's not a jurisdiction problem? Well, no, it certainly is a jurisdiction problem. The issue was out there until they agreed. The court set a hearing to set a trial date on the arrearage. The trial never took place. Instead, the parties agreed and an order was entered. But until that point, that issue was out there. It doesn't matter if the order was agreed. It remains that the judgment was not filed until that January order, that agreed order. Until then, that issue was out there. Well, what about Rule 303A? I intend to spend most of my time in this argument on Rule 303A, Your Honor. Do you really? I do. Oh, because I have some questions about the property, so maybe I should ask mine first so you can get to the rest of your time on 303. Well, perhaps you should. I was going to answer your question about the delay. The finances were very complicated, and that's why the stipulation wasn't there, because otherwise they'd still be messing around down there. Well, from the way the brief's read – I haven't read the record, obviously – but it seems like there was a stipulation made, but then during the hearings, nobody could agree on the stipulation. So stipulations – when I think of a stipulation, it's something that's entered in the court and there's really no more need to testify about it. It seems that in this case, there was a lot of testimony about it. Well, it's a mighty complicated case. I'm sure you see the record. How can you rely on a stipulation that's really not a stipulation? If there's contested issues. I just found the use of the word stipulation odd, because there seemed to be so much argument over what the stipulation meant. Well, I think its significance is overrated, too. I think it would be overarching. In fact, the counsel did mention there was credibility issues on both sides. Yes, there were. Who decides who's credible? They both got up there on the stand, testified at a great length. The judge watched them at great length and made a decision as to who was telling the truth. The judge decided that Bob Trotsky was lying. Repeatedly. That he had basically pilfered a million dollars from his marriage, a million dollars in assets. That he was lying about his lifestyle, he was lying about his income, and failed to account for that money. And that's the overarching thing. Where'd the million go? That's just it. He won't say. One million dollars in assets. Just poof. He had it last. He had it. The parties didn't even need that money to live. Their incomes were more than sufficient to live off of. That should have just been banked. Just gone. Mine proceeds check, written out just to him. Gone. The Ridgeview property, gone. Where's that money? Where is all that? It's over $400,000. Just for the Ridgeview property. Just plain gone. He can't say where it went. I would like to know. I'm sorry we're kind of like pulling you both ways. But I would like to know why you don't think that 303A saves the jurisdiction. Oh, I. Actually, if there hadn't been any questions, I would have gone straight to that. Actually, I printed out myself a jungle copy so I wouldn't have to squeak. All right. If you were my age, believe me, I'd be plugging that. Me too. Okay. 303A has two parts. Well, it has more than two parts. But it has two parts we're dealing with here. Because there's two things in 303A that can save a premature notice of appeal. There's part one and there's part two. And I'd just like to read very briefly from part one. And it starts out like this. The notice of appeal must be filed within 30 days after the entry of the final judgment. Or if a timely post-trial motion directed against the judgment is filed within 30 days after the entry of the order, disposing of the last pending post-judgment motion. Again, directed against that judgment or order. Says that twice. So what is a timely post-trial motion? Well, we can tell. The Supreme Court just told us. A timely post-trial motion is filed within 30 days of the judgment and it's directed against the judgment. If it's a motion to clarify, that's not a timely post-trial motion. It's not directed against the judgment. If it's a petition to modify child support and maintenance based on substantial change in circumstances, that's not a motion directed against the judgment. You could file that any time. It can be within 30 days of the judgment, but it does not have to be. And it doesn't attack the judgment. It alleges a substantial change in circumstances. That's why the petition to modify did not total the time for filing the notice of appeal under Section A-1. Any questions about that? Do you see where I'm going? That's what timely has to mean, doesn't it? I mean, any motion, any motion that's filed after trial is a post-trial motion. Any motion filed after judgment is a post-judgment motion. What makes a post-trial motion or a post-judgment motion timely? Again, this section tells us. It's timely because it tolls the time of appeal. It tolls the time of appeal because it's on time. It's within 30 days, but that wouldn't matter if it wasn't also, as the section continues, directed against the judgment. If it's directed against the judgment and it's filed on time, it tolls the time. It's a timely post-trial motion. It tolls the time for filing the notice of appeal. It's not directed against the judgment. It doesn't. Questions so far? I can barely see you now. No, I don't have any questions. Okay. Same section. The last section. The last sentence, rather. Section 8-1 states, a notice of appeal filed after the court announces a decision but before entry of the judgment order is treated as filed on the date of and after the entry of the judgment order. Now, it doesn't say, file that before the entry of a judgment order. It's the judgment order. This is what. This was to take care of the problem where the judge says, defendant, I find for you, write it up. Well, it didn't get entered for more than 30 days. Question was, had the plaintiff blown his time of appeal? The judgment was already announced. And this section was to clarify that, to make it clear that if the decision was announced and an order was requested, the time for filing the notice of appeal began to run when the written order was filed. So, again, it says, notice of appeal filed after the court announces a decision but before the entry of the judgment or order is treated as filed when the written order is filed. In this case, Robert's brief suggests that post-trial, that the motion, that the order of appeal, the September 2012 order, was an announcement. But there was a trial date set in that order. A trial date set. It doesn't say announcement of a trial date and then an order. It doesn't say that. This case, as far as finality goes, is governed by the Mackin case. Justice Warmer, you were on the panel on that. I don't want to get by here today without mentioning the Mackin case because if you follow Mackin, you'll all be just fine. With that said, I'd like to get to Rule 303A2. It states, when a timely post-judgment motion has been filed, a notice of appeal filed before the entry of the order disposing of the last pending post-judgment motion or before the final disposition of a separate claim becomes effective when the order disposing of said motion or claim is entered. That's a lot of words. Let's just look at the first eight because this is the sentence that Robert is dependent on to say there's notice of appeal. This is the sentence. The first eight words. When a timely post-judgment motion has been filed. Timely post-judgment motion. What did we just learn from Section A1 about timely post-judgment motions? We know they have to be within 30 days. Was the petition to modify child support and maintenance within 30 days? We know that it was. Was it a timely post-judgment motion? But we know that to be a timely post-judgment motion, it's got to be directed against the judgment. The Supreme Court just told us that two sentences back. And a motion, a petition to modify, is not. Cannot be. Therefore, there is no timely post-judgment motion in this case. There is a motion filed after the judgment. Even though it's filed within 30 days. But it's not a timely post-judgment motion. It's not against the September 2012 judgment. Totals nothing. Justice Kate, if you have any questions about this, I'm happy to answer them. This is kind of an interest of mine. It's a personal interest of mine. That's okay. Thank you. The only other thing that I want to mention is McIntyre. McIntyre. Beautifully written case. Justice Donovan did it. Justice Goldberg concurred. It's a very short case. Four pages with the head notes. The head notes are almost two pages. I'd encourage the Court to have a look at that. I think it beautifully disposes of the issue of whether this was a final judgment. It does not go into Rule 303a. And that's why I have it today, prepared to continue on with it. I'd appreciate a few more questions so I can be sure I'm on the right track here. But I'm convinced that what I have explained is a sound reading of the rule. Frankly, there's no authority against it. Sure. I want to go back to property if I could. Sure. As Justice Champman said, we're kind of in two different directions. So I apologize for that. But if you look at page 11 of the brief that was filed by Robert, they give us these values of property. And according to the chart, anyway, it shows that the wealth awarded to Robert was in the negative figures, and the wealth awarded to your client was $700,000-plus. Assuming that we have jurisdiction, I have a hard time understanding that that would be an equitable division of property. And I'd like you to explain how it is equitable. Two things. Okay. First, the court did not believe Robert about where the $1 million or so in assets went. Did not believe him. Believes he still has it. He wouldn't admit it, and therefore the court essentially awarded it to Robert. But how can you award an unknown asset? I mean, what was the evidence that he had $1 million? He had it last, basically. He had it last. There was an account with $1 million in it? Because there's a lot of talk in the order about dissipation. The Ridgeview money is. I'm sorry? The Ridgeview money is. The original money? The Ridgeview money. The Ridgeview money. I think it was $1,000. Can you kind of tell us how he had it, where he had it? How is that decipherable? That's $500. That's not $1 million. No. It's a chunk. I get that. And I admit that. Justice Chapman has a good question, though. I would like the answer also. Where was it? How do you have it? Where? Well, I will admit that I do not have that answer on the tip of my tongue. I did quite some time ago. I believe that it was in an account to which he had access. But I would have to check that. And I wouldn't feel comfortable swearing to it. I think I'd have to trust the court to let me. I think, actually, that should be done. That's the way to handle it.  I can't find that in my notes. When was the actual date of dissolution entered? Was it in 2009? I admit that I don't know. I'm sorry. Well, that's the way it goes sometimes. Okay. Mr. Sheridan. Is there an opening question? Thank you. Thank you very much. Briefly on the jurisdictional issue, which we've discussed. Sure. I hadn't cut you off from Justice Chandler. No, that's what I would like to hear more of. 30382 saves this if it was a premature appeal. Frankly, it never even occurred to me within 30 days of the January 2013 stipulation. I don't want to use the word stipulation. That's probably a hot word in here right now with this case. Agreement as to what the arrearage was for child support. To file a second notice of appeal. Why not? Because I had been conferring with Mr. Blood, Counsel for Karen Trotsky. I had filed for two continuances already. Why wouldn't he have said, Barb, this is not right for appeal at this point if he didn't think the court had jurisdiction? I had asked for two continuances already. One of them, I believe, was in late January of 2013. Additionally, the matters that the trial court left pending, besides the fact that they were not matters of substantial controversy, that anybody could have looked at what was paid and what the order was for what was owed for child support and maintenance and figured it out. There were issues that were tried by the time testimony concluded in the winter of 2011. The judge left open the child support and maintenance arrearage that would have been due as of August 31, 2012, the last full month before the supplemental judgment was entered. So, I mean, are we going to say then that we had to wait for that to be resolved before we could appeal it? I mean, why don't we just wait two years for the case that's been done being tried? Because that's what it was. When this final order was entered, the agreement by the parties as to what the child support arrearage was, what the maintenance arrearage was, and how it was going to be repaid in January of 2012, it was almost two years. We have enough trouble with the 90 days, and we're going to keep dragging it out. I mean, this case is going to always have issues, okay? I mean, what are we going to do, keep holding one issue, holding the case under advisement for a while, and then, you know, addressing another issue that wasn't really tried at trial, that wasn't, that the court knows is right now, and then wait? I mean, we'll never be here on appeal. We're going to be appealing when their youngest child is in college. And that's not what these rules are intended for. They're not intended as a trickery. I think it's pretty unusual that the judge did enter the order that, saying that you guys just work out the arrearage, and if you don't, come back. Especially 19 months? Yes. In addition, she reset it for, I believe it was Halloween of 2012. It was three more months before they got in there and got it resolved. I mean, this case just keeps going and going and going. But I am kind of hung up on language that keeps appearing in the cases that says one of the criteria that you look at is the only thing remaining is to proceed with the execution of the judgment. Do you believe that could have been done? Yes, on the main issues it could have. Also, child support becomes a judgment once it becomes due and is missed. You could have executed on it very easily. You could have figured anybody, not you personally, I apologize, but anybody could have, sorry, I mean, if you say you're supposed to be paying me $500 a month for the last 12 months, that would be $6,000, and you show proof that the person has only paid $5,000. Well, we know they owe $1,000. These were simple mathematical calculations, and I don't think these rules, Rule 303A2 and any of the other appellate court rules, are intended to hold this matter up any further. It's enough. The trustees need a resolution. The judge told them she was going to give them a resolution. She didn't. And considering that Karen is being such a stickler for the rules on jurisdiction, she seems to totally be, I mean, have a breezy approach to the fact that this court kept this matter under advisement for 455 days past what they were supposed to. If I can briefly touch on the property issues, there was no finding of dissipation. Even if Mr. Troste did not account for that money, it was five years before the divorce. There was no breakdown of the marriage. These people were together. This was an award based on marital misconduct. This is another punitive award out of Madison County, and there needs to be a message sent that this is totally unacceptable. It is. He could be the worst husband on the planet. He could have, you know, spent the money in a way that's totally inappropriate. But if it's done while you're married and there's no finding of marital dissipation, and there wasn't, the Illinois Marriage and Dissolution of Marriage Act specifically indicates that you don't consider marital misconduct when awarding assets. And it would be one thing if this award were not so one-sided. Let's just say, you know, maybe they gave Karen $450,000 and Bob $325,000 or something like that. That would be a different case. But this was so one-sided. There's no way to start over. And even if somebody's a really, really lousy husband and mismanages money, even if you don't like that, and I don't like that. If that happened, I don't like it. But you know what? Judges have an obligation to follow the law and the rules of this state. And we have an IMDMA for that purpose, and it needs to be followed. Thank you. Thank you. Okay, this particular drasty case is taken under advisement for issuance of an opinion in due course.